CARPENTER LAW GROUP
TODD D. CARPENTER (234464)
402 W. Broadway, 29th Floor
San Diego, California 92101
Telephone:  619-756-6994
Facsimile:  619-756-6991
Email: Todd@Carpenterlawyers.com

Attorneys for Plaintiff and the Class

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVIS BENWARE, On Behalf of Himself and All Others Similarly Situated,<br><br>        Plaintiff,<br><br>vs.<br><br>HUGO BOSS, U.S.A., Inc. a Delaware Corporation,<br><br>        Defendants. | Case No. 3:12-cv-01527-MDD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS.**<br><br>Date: To be determined by Court<br>Time: To be determined by Court<br><br>Judge:  Hon. Mitchell D. Dembin<br>Courtroom:  1C |

Case No. 3:12-cv-01527-MDD

MEMO OF P'S AND A'S ISO PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

# TABLE OF CONTENTS

TABLE OF CONTENTS ……………………………………………………………II

TABLE OF AUTHORITIES …………………………………………… IV

I.    INTRODUCTION AND PROCEDURAL HISTORY ............................................. 1

II.   SETTLEMENT TERMS .................................................................................. 2

    A.    The Proposed Settlement Relief ...................................................... 2

    B.    The Proposed Notice Program ........................................................ 3

    C.    Notice and Administration Costs .................................................... 4

    D.    Attorneys' Fees And Expenses ........................................................ 4

    E.    Incentive Award .............................................................................. 4

III.  THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY APPROVAL .......................................................................... 5

    A.    The Standard Used to Decide Whether to Preliminarily Approve a Class Action Settlement ................................................................ 5

        1.    The Proposed Settlement Resulted from Serious, Informed and Non-Collusive Arm's-Length Negotiations......................... 6

        2.    The Proposed Settlement Is Fair to Both Plaintiff and Class Members.................................................................................. 7

        3.    The Proposed Settlement Is Reasonable and Within the Range of Possible Approval and Risks of Moving Forward are Significant. ............................................................................. 8

IV.  THE PROPOSED CLASS SHOULD BE CONDITIONALLY CERTIFIED ....... 10

    A.    The Settlement Class Satisfies Federal Rule of Civil Procedure 23(a) ........ 10

        1.    Numerosity................................................................................ 10

        2.    Commonality............................................................................. 11

        3.    Typicality ................................................................................. 11

        4.    Adequacy of Representation ..................................................... 12

    B.    The Settlement Class Should Be Preliminarily Approved Under Federal Rule of Civil Procedure 23(b)(3) ...................................... 12

        1.    Common Questions Predominate Over Individual Issues .................. 13

        2.    A Class Action Is The Superior Method to Settle This Controversy ............................................................................. 14

Case No. 3:12-cv-01527-MDD      ii

MEMO OF P'S AND A'S ISO PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

V.      THE PROPOSED CLASS NOTICE PROGRAM IS APPROPRIATE .................15

VI.     THE PROPOSED SCHEDULE OF EVENTS ........................................................16

VII.    CONCLUSION..........................................................................................................17

# TABLE OF AUTHORITIES

## **Cases**

*Adams v. Inter-Con Security System, Inc.,*
No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ................. 7

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591, 620 (1997).............................................................. 10, 13, 14

*Churchill Village, LLC v. Gen. Elec. Co.,*
361 F.3d 566, 576 (9th Cir. 2004) ........................................................ 5, 15

*Compact Disc. Minimum Advertised Price Antitrust Litig.,*
216 F.R.D. 197, 203 (D. Me. 2003)............................................................. 16

*Deposit Guaranty Nat'l Bank v. Roper,*
445 U.S. 326, 338-39 (1980) ................................................................. 14

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 159, 173 (1974)..................................................................... 15

*Employee Benefit Plans Secs. Litig.,*
No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993)................................. 6

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011, 1019 (9th Cir. 1998) .................................................... passim

*Hanon v. Dataproducts Corp.,*
976 F.2d 497, 508 (9th Cir. 1992) ........................................................... 11

*Indep. Energy Holdings PLC,* No. 00
Civ. 6689(SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ...................... 7

*Jordan v. Los Angeles County,*
669 F.2d 1311, 1319 (9th Cir. 1982) ......................................................... 10

*Keilholtz v. Lennox Health Prods., Inc.,*
No. C08-00836CV 2010 WL 668067 (Feb. 16, 2010, N.D. Cal.) ............................... 11

*L.L.C. v. General Electric,*
361 F.3d 566, 575 (9th Cir. 2004) ........................................................... 15

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands,*
*Inc.,* 244 F.3d 1152, 1162-63 (9th Cir. 2001)............................................... 13

*Manchaca v. Chater,*
927 F. Supp. 962, 967 (E.D. Tex. 1996)........................................................ 7

*Mendoza v. Tucson Sch. Dist. No. 1,*
623 F.2d 1338, 1352 (9th Cir. 1980) ......................................................... 15

*Milstein v. Huck,*
600 F. Supp. 254, 267 (E.D.N.Y 1984) ........................................................ 9

*Molski v. Gleich*,
   318 F.3d 937, 955 (9th Cir. 2003) ........................................................................ 12

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306, 315 (1950) ................................................................................... 15

*Officers for Justice v. Civil Serv. Comm.*,
   688 F.2d 615, 625 (9th Cir. 1982) ................................................................... 2, 5

*Pacific Enter. Sec. Litig.*,
   47 F.3d 373, 378 (9th Cir. 1995). ........................................................................ 5

*Pirian v. In-N-Out Burgers*,
   2007 WL1040864, *3 (C.D. Cal. 2007 ................................................................ 8

*Rodriguez v. West Publ'g Co.*,
   563 F.3d 948, 964 (9th Cir. 2009) ................................................................... 2, 8

*Safeco Ins. Co. of America v. Burr*,
   551 U.S. 47 (2007), 27 S. Ct. 2201, 2208, 2215 and 2216........................... 1, 9

*Satchell v. Federal Express Corp.*,
   Nos. C03-2659 SI, C 03-2878 SI, 2007 WL 1114010 at *4 (N.D. Cal.
   April 13, 2007)....................................................................................................... 6

*Simon v. Toshiba America*,
   No. C 07-06202 MHP, 2010 WL 1757956, at *5 (N.D. Cal. Apr. 30,
   2010) ....................................................................................................................... 8

*Staton v. Boeing*,
   327 F.3d 938, 957 (9th Cir. 2003) ..................................................................... 12

*Tchoboian v. Parking Concepts, Inc.*,
   2009 WL 2169883, at *4 (C.D. Cal. July 16, 2009)......................................... 10

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227, 1234 (9th Cir. 1996) ................................................................... 14

*Vasquez v. Superior Court*,
   4 Cal. 3d 800, 808 (1971) ................................................................................... 14

*Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735, 745 (S.D.N.Y. 1985) .............................................................. 7

*Wiener v. Dannon Co., Inc.*,
   255 F.R.D. 658, 664 (C.D. Cal. 2009)..........................................................passim

*Williams v. Costco Wholesale Corp.*,
   No. 02cv2003 IEG (AJB), 2010 WL 761122, at *3 (S.D. Cal. Mar. 4,
   2010) ....................................................................................................................... 8

*Young v. Polo Retail, LLC*,
   No. C-02-4546 (VRW), 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25,
   2006) ................................................................................................................... 6, 8

Case No. 3:12-cv-01527-MDD       v

MEMO OF P'S AND A'S ISO PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180, 1190-92 (9th Cir. 2001) .................................................. 14

**Rules, Statutes & Other Authorities**

15 U.S.C. § 1681(b) ............................................................................................ 1

15 U.S.C. § 1681c(g) .......................................................................................... 9

15 U.S.C. § 1681c(g)(1) ............................................................................... 1, 10

15 U.S.C. § 1681n(a) .......................................................................................... 1

15 U.S.C. §1681(n) ............................................................................................ 9

15 U.S.C. § 1681c(g)(1) .................................................................................... 12

459 U.S. 810 (1982) .......................................................................................... 10

Fair and Accurate Credit Transactions Act ............................................. 1, 8, 10

Fair Credit Reporting Act .................................................................................. 1

Federal Practice & Procedure §1777 ............................................................... 13

Federal Rule of Civil Procedure 23(a) ............................................ 10, 12, 13, 14

Federal Rule of Civil Procedure 23(b)(3) ................................................. 13, 14

Federal Rule of Civil Procedure 23(g)(1) ........................................................ 12

Manual for Complex Litigation ..................................................................... 2, 5

MEMO OF P'S AND A'S ISO PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND PROCEDURAL HISTORY

This consumer class action was brought by Plaintiff Travis Benware on behalf of himself and all other similarly situated consumers who made a credit card or debit card purchase at a Hugo Boss, U.S.A., Inc. ("Hugo Boss") retail store in the United States between June 4, 2008 and July 10, 2012.  Hugo Boss U.S.A., Inc. is an upscale retailer of fashionable, high-end men and women's clothing and accessories.  This action arises from Plaintiff's allegations that Defendant Hugo Boss systematically used electronically printed receipts which contain the numerical expiration dates of its customers' credit cards and debit cards in violation of 15 U.S.C. § 1681c(g)(1).  The Fair Credit Reporting Act ("FCRA") endeavors to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy[1]," by, among other things, compelling merchants to adopt procedures to safeguard consumers' credit information.  *See* 15 U.S.C. § 1681(b).  In 2003, Congress passed the Fair and Accurate Credit Transactions Act ("FACTA"), Pub.L. No. 108–159, 117 Stat.1952 (2003) (codified at 15 U.S.C. § 1681c(g)), amending the FCRA.  FACTA, which is aimed at protecting consumers from identity theft, provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number *or the expiration date* upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1) .  As part of its framework, the FCRA authorizes consumers to bring private suits for willful violations of its terms. Statutory damages from $100 to $1,000 are available under the statute for "willful" violations of FACTA. 15 U.S.C. § 1681n(a) as are punitive damages and attorneys' fees.

This class action was filed on June 21, 2012, asserting a single class-wide claim for violations of the Fair and Accurate Credit Transaction Act, 15 U.S.C. §1681c(g).  On August 23, 2012, Defendant answered Plaintiff's Complaint, denied liability and asserted

---

[1] *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 127 S.Ct. 2201, 2205, 167 L.Ed.2d 1045 (2007)

several enumerated affirmative defenses. Counsel for the parties conducted a thorough examination and investigation of the facts and law relating to the matters in the litigation, including but not limited to, engaging in discovery, both formal and informal, through written interrogatories, document requests and the examination of thousands of pages of Hugo Boss documents.   Thereafter, on April 11, 2013, the parties participated in a settlement conference with the Honorable Magistrate Mitchell D. Dembin.   That Settlement Conference culminated in this settlement.

At the preliminary approval stage, the Court makes only a preliminary determination of the fairness, reasonableness and adequacy of the Settlement so that notice of the Settlement may be given to the Class and a fairness hearing may be scheduled to make a final determination regarding the fairness of the Settlement.   *See* 4 Newberg on Class Actions, §11.25 (4th ed. 2002); Manual for Complex Litigation §21.632 (4th ed. 2005).  In so doing, the Court reviews the Settlement to determine that it is not collusive and, "taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm.*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Rodriguez v. West Publ'g Co.*, 563 F.3d 948, 964 (9th Cir. 2009).

Here, as set forth in further detail below, the proposed Settlement plainly meets this standard.   Thus, Plaintiff requests that the Court enter the [Proposed] Order re: Preliminarily Approval of Class Action Settlement   that, among other things: (1) preliminarily approves the terms of the Settlement; (2) approves the form, method and plan of notice of the Settlement; (3) conditionally certifies the Class for settlement purposes; and (4) schedules a Final Settlement Hearing and related dates at which the request for final approval of the proposed Settlement and entry of the Judgment will be considered.

## II.   SETTLEMENT TERMS

### A.   The Proposed Settlement Relief

In return for a release of all claims arising from the facts and circumstances plead in this lawsuit, Hugo Boss will create a $550,000 fund to provide gift cards valued at up to

$25.00 which may be used toward the purchase of any retail product, clothing item, or apparel sold at any Hugo Boss retail location in the United States or online at www.hugoboss.com to each class member who submits a valid claim form. The gift cards will be stackable, meaning that any single customer may use multiple gift cards in a single purchase transaction. The gift cards are also fully transferrable and have no expiration date. The total aggregate value of the Gift Cards redeemed by the Settlement Class will not exceed five-hundred fifty thousand dollars ($550,000.00).  In the event more than twenty-two thousand (22,000) claims are accepted, the total value of the Gift Cards distributed to the Class will be reduced on a pro-rata basis. For example, in the event twenty-five thousand (25,000) claims are accepted by the Claims Administrator, the total value of each individual Gift Card would be reduced from twenty five dollars ($25.00) to twenty two dollars ($22.00).

## B.    The Proposed Notice Program

Through discovery, the parties identified all email addresses provided to Hugo Boss by retail customers and maintained in the Hugo Boss customer database ("Customer Email Distribution List"). This list includes the email addresses for approximately 125,695 known Hugo Boss customers.  The parties also identified all mailing addresses maintained in the Hugo Boss database which were provided to Hugo Boss by retail customers. This list includes the postal addresses for approximately 257,015 known Hugo Boss customers.   The parties have elected to provide direct electronic mail and/or postal mail notice to all customers who have provided Hugo Boss with such information. Therefore, following entry of this Court's preliminary approval order, class notice will be disseminated as follows:

Within ten (10) days, the claims administrator shall distribute by electronic mail to the Customer Email Distribution List: 1) the Email Claim Form (*See* Exhibit 1 Settlement Agreement Exhibit "A"); and 2) the Summary Notice (*See* Exhibit 1, Settlement Agreement Exhibit "C") setting forth the basic terms of the settlement agreement and

directing Class Members to visit a Web site for a copy of the Detailed Notice (*See* Exhibit 1; Settlement Agreement Exhibit "D").   Also within ten (10) days, the claims administrator shall distribute by U.S. Postal Service regular mail to the Customer Mailing Address Distribution List: 1) the Postal Claim Form (*See* Exhibit 1 Settlement Agreement Exhibit "B"); and 2) the Summary Notice (*See* Exhibit 1, Settlement Agreement Exhibit "C").

In order to notify those customers for whom Hugo Boss does not maintain an email address or postal address, within thirty (30) calendar days of the Preliminary Approval Date, Hugo Boss or the Claims Administrator will publish the Summary Notice in the National addition of the USA Today newspaper.  The Summary Notice will be published on two weekdays in a one eighth (1/8) page space.   The Claims Administrator shall post the Detailed Notice and Claim Form on their Web site within fifteen (15) calendar days of the Preliminary Approval Date and shall maintain that Web site notice for sixty (60) calendar days.

### C.    Notice and Administration Costs

All notice and claim administration costs will be paid by Hugo Boss, separate and apart from any consideration being paid directly to the Class.  The parties estimate the Notice Costs to be approximately $233,000.00.

### D.    Attorneys' Fees And Expenses

Hugo Boss agrees not to oppose Class Counsel's application for attorneys' fees, costs, and expenses in an amount up to, but not to exceed $140,000.00. The negotiation of attorneys' fees occurred separate and apart from the resolution of the class claims. Hugo Boss has agreed to pay attorneys' fees, costs and expenses separate and apart from the fund established to pay the class claims.

### E.    Incentive Award

Hugo Boss has also agreed not to oppose Class Counsel's application for an

incentive award to Plaintiff Travis Benware in the amount of three thousand five hundred dollars. The parties believe such an award is reasonable in light of the nature and circumstances of the action. *See* Exhibit 1, ¶3.9.

## III.   THE PROPOSED SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY APPROVAL

### A.   The Standard Used to Decide Whether to Preliminarily Approve a Class Action Settlement

The approval of a proposed class action settlement is a matter within the broad discretion of the trial court. *Officers for Justice*, 688 F.2d at 625. In making this determination, the Court should evaluate the fairness of the settlement in its entirety. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . [t]he settlement must stand or fall in its entirety.").

Settlements of complex class actions prior to trial are strongly favored. *See Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). The preliminary approval step requires the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Manual*, §21.632, at 321. At this stage, the Court need only conduct a *prima facie* review of the relief and notice provided by the Stipulation of Settlement to determine whether notice should be sent to the settlement Class Members. *Id*. The Court's review is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625; *accord Hanlon*, 150 F.3d at 1027. This is a minimal threshold:

> [I]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing . . .

1  *Young v. Polo Retail, LLC*, No. C-02-4546 (VRW), 2006 WL 3050861, at *5 (N.D. Cal.

2  Oct. 25, 2006); *see also Satchell v. Federal Express Corp*., Nos. C03-2659 SI, C 03-2878

3  SI, 2007 WL 1114010 at *4 (N.D. Cal. April 13, 2007).

4      Here, the proposed Settlement plainly satisfies the standard for preliminary

5  approval, as there is no question as to its fairness, reasonableness and adequacy, placing it

6  is squarely within the range of possible approval.

7

8  **1.    The Proposed Settlement Resulted from Serious, Informed and Non-Collusive Arm's-Length Negotiations**

9      The requirement that a settlement be fair is designed to protect against collusion

10  among the parties.  Typically, "[t]here is a presumption of fairness when a proposed class

11  settlement, which was negotiated at arm's-length by counsel for the class, is presented for

12  Court approval."  *Newberg*, §11.41; *see also In re Employee Benefit Plans Secs. Litig*.,

13  No. 3-92-708, 1993 WL 330595, at *5 (D. Minn. June 2, 1993) ("[t]he court is entitled to

14  rely on the judgment of experienced counsel in its evaluation of the merits of a class

15  action settlement").

16      Here, the parties did not begin to discuss settlement until after the conclusion of

17  significant discovery efforts.  *See* Declaration of Todd D. Carpenter, ¶4. During this time

18  period, Hugo Boss produced several thousand pages of documents responsive to

19  Plaintiff's document requests and responded to Plaintiff's Special Interrogatories. Id. at

20  ¶4.  Plaintiff obtained volumes of information relating to the number of alleged violations,

21  the specific retail stores at issue, the business processes in place regarding the processing

22  of payment card transactions and the creation of receipts, third party agreements relating

23  to such processing and information regarding potential class members for purposes of

24  providing a robust notice campaign. Id. at ¶4.   Through this information, Plaintiff was

25  able to assess the strengths and weaknesses of his case, including the value of the

26  potential damage claims. *Id.*

27      Once the parties had a sufficient understanding of the conduct at issue, the number

28  of potential transactions and alleged violations, the parties engaged in preliminary

settlement discussions in advance of a formal settlement conference with Magistrate Dembin. Unable to reach agreement, the parties moved forward with the formal settlement conference on April 11, 2013.  By this time, Plaintiff and Plaintiff's counsel, who are experienced in prosecuting complex class action claims, had "a clear view of the strengths and weaknesses" of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement.  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985); *see also Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996).  The parties reached agreement regarding the material terms of the class settlement during this Settlement Conference.  The parties had a limited discussion regarding attorneys' fees, but did not reach agreement. Following the Settlement Conference, the parties continued to negotiate and finalize settlement details and further engaged a negotiation regarding the payment of attorneys' fees. The fact that the Settlement was prompted by an experienced Magistrate is one factor that demonstrates the Settlement was anything but collusive.  *See, e.g., Adams v. Inter-Con Security System, Inc.*, No. C-06-5428 MHP, 2007 WL 3225466, at *3 (N.D. Cal. Oct. 30, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *In re Indep. Energy Holdings PLC,* No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").  Further, the nature of the subsequent negotiations between the parties, the experience of counsel as longstanding class action attorneys, and the fair result reached are illustrative of the arms-length negotiations that lead to the Settlement and Release.

### 2.    The Proposed Settlement Is Fair to Both Plaintiff and Class Members

The proposed Settlement is fair as to Plaintiff and all Class Members in that it allows for the payment of a $25.00 gift card to class members in a case where no actual harm was alleged or occurred. No Plaintiff is alleged to have suffered any damages or to

have lost any amount of money at all. In addition, Plaintiff Benware does not receive any unduly preferential treatment under the Settlement. With the exception of a service award of three thousand five hundred dollars ($3,500.00) to Plaintiff Benware to account for his willingness to step forward and represent other consumers, and to compensate him for his time and effort devoted to prosecuting the common claims (including attending the half-day Settlement Conference in April 2013), Plaintiff is treated the same as every other Class Member. Such service awards are "fairly typical in class actions." *Rodriguez,* 563 F.3d at 958; *see also In re Simon v. Toshiba America,* No. C 07-06202 MHP, 2010 WL 1757956, at *5 (N.D. Cal. Apr. 30, 2010); *Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG (AJB), 2010 WL 761122, at *3 (S.D. Cal. Mar. 4, 2010) ("Although [plaintiff] seeks a $5,000 service fee for himself which is not available to other class members, the fee appears to be reasonable in light of [plaintiff's] efforts on behalf of the class members.").

### 3.  The Proposed Settlement Is Reasonable and Within the Range of Possible Approval and Risks of Moving Forward are Significant.

The proposed Settlement is reasonable and falls well within the range of possible approval. *Young,* 2006 WL 3050861, at *5. The lawsuit itself has caused Hugo Boss to refrain from the alleged conduct. *See* Exhibit 1, "Settlement And Release Agreement," ¶3.0. In order to ultimately prevail at trial, Plaintiff would be required to clear significant hurdles. The provision of FACTA (codified as 15 U.S.C. §1681c(g) of the FCRA) at issue in this matter, provides that:

> "No person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."

FACTA "expressly prohibits printing more than the last five digits of the credit/debit card numbers and also prohibits printing the card's expiration date." *Pirian v. In-N-Out Burgers*, 2007 WL1040864, *3 (C.D. Cal. 2007). However, in order to achieve

statutory penalties for the class, Plaintiff would be required to prove that Hugo Boss acted "willfully" in its alleged violations of the statute[2].   The United States Supreme Court recently confirmed that a company is only liable for a willful violation of the FCRA if it intentionally engages in FCRA-prescribed conduct (such as providing customers with receipts that violate 15 U.S.C. § 1681c(g)), either knowing that such conduct violates the FCRA or recklessly disregarding whether it violates the FCRA.  *See Safeco Ins. Co. of America v. Burr,* 551 U.S. 47 (2007), 27 S. Ct. 2201, 2208, 2215 and 2216. The difficulty in proving "willfulness" on a class wide basis against a sophisticated corporate defendant is one factor considered by Plaintiff in reaching a resolution of the class-wide claims.

The proposed Settlement is able to provide a meaningful benefit to the class without the significant risk and delays of continued litigation, trial and appeal.  The expense, difficulty, complexity, and duration of litigation are significant factors considered in evaluating the reasonableness of a settlement.  Litigating this class action through trial would undoubtedly be time-consuming and expensive.  As with most class actions, this action is complex. The establishment of the risk of identity theft and the assessment of statutory damages would require analysis by experts for both parties.  At a minimum, absent settlement, litigation would likely continue for years before Plaintiff or the Class would see any recovery.  That a settlement would eliminate the delay and expenses strongly weighs in favor of approval.  *See Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y 1984).

By reaching this Settlement, the parties will avoid protracted litigation and will establish a means for prompt resolution of Class Members' claims against Hugo Boss. This avenue of relief provides a meaningful benefit to Class Members.   Given the alternative of long and complex litigation before this Court, the risks involved in such litigation, and the possibility of further appellate litigation, the availability of prompt relief under the Settlement is highly beneficial to the Class. Without question, the parties

---

[2] *See* 15 U.S.C. §1681(n)

worked to achieve a comprehensive settlement that provides valuable benefits to the Class. There is no reason to doubt the fairness, reasonableness and adequacy of the Settlement, which is surely within the range of possible approval[3].

## IV.   THE PROPOSED CLASS SHOULD BE CONDITIONALLY CERTIFIED

The Ninth Circuit recognizes the propriety of certifying a settlement Class to resolve consumer lawsuits. *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998).  When presented with a proposed settlement, a court must first determine whether the proposed settlement class satisfies the requirements for class certification under Federal Rule of Civil Procedure 23. *Id.*  But in assessing those certification requirements, a court may properly consider that there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

### A.   The Settlement Class Satisfies Federal Rule of Civil Procedure 23(a)

Rule 23(a) enumerates four prerequisites for class certification, referred to as: (1) numerosity;  (2) commonality;  (3) typicality;  and  (4) adequacy.   In light of the settlement, the Parties agree that each of these requirements is met.

#### 1.   Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a); *Wiener v. Dannon Co., Inc*., 255 F.R.D. 658, 664 (C.D. Cal. 2009).  Here, the numerosity requirement is readily met because it is difficult or inconvenient to join all members of the proposed Class. *Id.*; *Tchoboian v. Parking Concepts, Inc*., 2009 WL 2169883, at *4 (C.D. Cal. July 16, 2009) (citing *Jordan v. Los Angeles County*, 669 F.2d 1311, 1319 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982)).  From June 4, 2008 through July 10, 2012, Hugo Boss allegedly conducted approximately 2,155,978 transactions in violation of 15 U.S.C. § 1681c(g)(1).  *See* Hugo

---

[3] *See* Exhibit 2, a comparison of related FACTA settlements.

Boss Response to Special Interrogatory No. 9.   Accordingly, the numerosity requirement is satisfied.

### 2.   Commonality

"The existence of shared legal issues with divergent factual predicates is sufficient [to satisfy commonality], as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019 *In re First Alliance Mortg. Co*., 471 F.3d 977, 990-91 (9th Cir. 2006).   The commonality requirement is construed "permissively." *Hanlon*, 150 F.3d at 1019; *Wiener*, 255 F.R.D. at 664.

Plaintiff's complaint alleges common issues that will be addressed by this Settlement.   For example, Plaintiff alleges that the wrongdoing here involves the systematic use of electronic cash register equipment to print standardized receipts containing the offending expiration dates. *See Weiner*, 255 F.R.D. at 665 ("The proposed class members clearly share common legal issues regarding Dannon's alleged deception and misrepresentations in its advertising and promotion of the Products.").

### 3.   Typicality

Rule 23(a)(3) typicality is satisfied where the Plaintiff's claims are "reasonably co-extensive" with absent Class Members' claims; they need not be "substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Wiener*, 255 F.R.D. at 665.  The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named Plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992).  Thus, "[t]he purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Id*.  For example, in *Keilholtz v. Lennox Health Prods., Inc.*, No. C08-00836CV 2010 WL 668067 (Feb. 16, 2010, N.D. Cal.), in certifying UCL and CLRA claims, the court found that the typicality requirement was satisfied because: "Plaintiffs' claims are all based on Defendants' sale of allegedly dangerous fireplaces without adequate warnings." *Id.* at *5.

According to the complaint, Plaintiff and Class Members were all exposed to the same misconduct, *i.e.* the printing of the expiration dates for their payment cards on the purchase receipts they received from Hugo Boss retail stores. Under the claims alleged, Plaintiff and Class Members also seek relief for the same alleged wrongful conduct, *i.e.*, violation of 15 U.S.C. § 1681c(g)(1). Therefore, for purposes of the settlement, the typicality requirement is met.

### 4. Adequacy of Representation

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." In the Ninth Circuit, adequacy is satisfied where (i) counsel for the class is qualified and competent to vigorously prosecute the action, and (ii) the interests of the proposed class representatives are not antagonistic to the interests of the Class. *See, e.g., Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1020; *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003); *Wiener*, 255 F.R.D. at 667.[4]

Adequacy has also been met in this case. First, the proposed class counsel is qualified and experienced in class action litigation. *See* Carpenter Declaration ¶¶10-11. Further, Plaintiff's Counsel has performed extensive work to date in identifying and investigating the potential claim in this action, researching the underlying case law, developing a strategy to conclusively demonstrate the existence of willful misconduct, and in successfully negotiating the proposed Settlement. *See Emulex*, 210 F.R.D. at 720 (court evaluating adequacy of counsel's representation may examine "the attorneys' professional qualifications, skill, experience, and resources . . . [and] the attorneys' demonstrated performance in the suit itself"). Second, there is no conflict between Plaintiff's interests and the interests of the Class Members.

### B. The Settlement Class Should Be Preliminarily Approved Under Federal Rule of Civil Procedure 23(b)(3)

Plaintiff seeks certification of a settlement Class under Rule 23(b)(3). Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be

---

[4] Rule 23(g)(1) also requires the Court to appoint class counsel. Plaintiff requests the Court appoint Todd Carpenter of the Carpenter Law Group as class counsel.

served best by settling their difference in a single action." *Hanlon*, 150 F.3d at 1022 (*quoting* 7A C.A. Wright, A.R. Miller, & M. Kane, *Federal Practice & Procedure* §1777 (2d ed. 1986)).   There are two fundamental conditions to certification under Rule 23(b)(3): (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3); *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1162-63 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1022; *Wiener*, 255 F.R.D. at 668.  As such, Rule 23(b)(3) encompasses those cases "in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615; *Wiener*, 255 F.R.D. at 668.

### 1.   Common Questions Predominate Over Individual Issues

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  "Predominance is a test readily met in certain cases alleging consumer . . . fraud . . . ." *Id.*  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Wright & Miller*, §1778; *Falcon*, 457 U.S. at 157 n.13 (commonality and typicality tend to merge).

The proposed settlement satisfies the predominance requirement.  As discussed above, Plaintiff alleges that the Class Members are entitled to the same legal remedies premised on the same alleged wrongdoing.  The central issue for every claimant is whether they made a purchase at a Hugo Boss retail store with a payment card and received an electronically printed receipt without the expiration date of their payment card truncated. Under these circumstances, there is sufficient basis to find that the requirements of Rule 23(b)(3) are present.  *See Weiner*, 255 F.R.D. at 669 (predominance satisfied

1    when alleged misrepresentation of product's health benefits were displayed on every

2    package).

3         **2.     A Class Action Is The Superior Method to Settle This Controversy**

4         Rule 23(b)(3) sets forth the relevant factors for determining whether a class action

5    is superior to other available methods for the fair and efficient adjudication of the

6    controversy.   These factors include: (i) the Class Members' interest in individually

7    controlling separate actions; (ii) the extent and nature of any litigation concerning the

8    controversy already begun by or against Class Members; (iii) the desirability or

9    undesirability of concentrating the litigation of the claims in the particular forum; and

10   (iv) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3); *see Zinser*

11   *v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-92 (9th Cir. 2001).  "[C]onsideration

12   of these factors requires the court to focus on the efficiency and economy elements of the

13   class action so that cases allowed under subdivision (b)(3) are those that can be

14   adjudicated most profitably on a representative basis." *Zinser*, 253 F.3d at 1190 (citations

15   omitted); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)

16   (finding the superiority requirement satisfied where granting class certification "will

17   reduce litigation costs and promote greater efficiency").

18        An assessment of the Rule 23(b)(3) "superiority" factors shows that a class action is

19   the preferred procedure for this settlement.  The damages at issue for each Class Member

20   are not large.  *Zinser*, 253 F.3d at 1191, *Wiener* 255 F.R.D. at 671.  It is neither

21   economically feasible, nor judicially efficient, for the tens of thousands of Class Members

22   to pursue their claims against Hugo Boss on an individual basis.  *Hanlon*, 150 F.3d at

23   1023; *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Vasquez v.*

24   *Superior Court*, 4 Cal. 3d 800, 808 (1971).  Additionally, the difficulties of managing a

25   class action are vitiated by the fact of this settlement.  When "confronted with a request

26   for settlement-only class certification, a district court need not inquire whether the case, if

27   tried, would present intractable management problems . . . for the proposal is that there be

28   no trial." *Amchem*, 521 U.S. at 620.

## V.   THE PROPOSED CLASS NOTICE PROGRAM IS APPROPRIATE

The threshold requirement concerning Class Notice is whether the means employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the Class Members' rights to opt out or object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 159, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).  The mechanics of the notice process are left to the discretion of the court, subject only to the broad "reasonableness" standards imposed by due process.  In this Circuit, it has long been the case that a notice of settlement will be adjudged satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)); *Hanlon*, 150 F.3d at 1025 (notice should provide each absent class member with the opportunity to opt-out and individually pursue any remedies that might provide a better opportunity for recovery).

The proposed Notices more than satisfy these requirements.  The parties have negotiated and drafted a Class Notice.  The Class Notice is written in simple terminology and includes: (1) basic information about the lawsuit; (2) a description of the benefits provided by the settlement; (3) an explanation of how Class Members can obtain settlement benefits; (4) an explanation of how Class Members can exercise their right to opt-out or object to the settlement; (5) an explanation that any claims against Hugo Boss that could have been litigated in this action will be released if the Class Member does not opt out from the settlement; (6) the names of counsel for the Class and information regarding attorneys' fees; (7) the fairness hearing date; (8) an explanation of eligibility for appearing at the fairness hearing; and (9) the settlement website and a toll free number where additional information can be obtained.

The contents of the proposed Class Notice are more than adequate.  The Notice provides Class Members with sufficient information to make an informed and intelligent

decision whether to object to the settlement.  As such, it satisfies the content requirements of Rule 23.  *See In re Compact Disc. Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003) ("notice must describe fairly, accurately and neutrally the claims and parties in the litigation entitled to participate, including the right to exclude themselves from the class").

Additionally, the proposed dissemination of the Class Notice satisfies all due process requirements.  The Settlement provides that Hugo Boss will provide notice to the Class after preliminary approval of the Settlement by the Court. Hugo Boss will provide direct email notice to approximately 125,695 of its customers (*See* Declaration of Todd D. Carpenter, ¶8) and direct mail notice to approximately 257,015 its customers (*See* Declaration of Todd D. Carpenter, ¶8).   Hugo Boss will also publish the summary notice in the National addition of the USA Today newspaper on two weekdays within thirty (30) days of Preliminary Approval.  The Claims Administrator shall post the detailed class notice and claim form on a dedicated website within fifteen (15) days of Preliminary Approval. Additionally, Class Notice will be available through Plaintiff's counsel's website.

In sum, the contents and dissemination of the proposed Class Notice constitutes the best notice practicable under the circumstances and fully complies with the requirements of Rule 23.

## VI.    THE PROPOSED SCHEDULE OF EVENTS

Dates, such as the time to complete publication of the Class Notice or to opt-out or object, are based on preliminary approval of the Settlement.  The related dates calculated in accordance with the Stipulation of Settlement are as follows:

/ / /

/ / /

| Event | Date |
|---|---|
| Preliminary Approval Granted | Day 1 |
| Notice sent to the Customer Email Distribution List Published | Before Day 11 |
| Notice sent to Customer Mailing Address Distribution List | Before Day 11 |
| Claims Administrator will post the Detailed Notice and Claim Form on its website | Before Day 16 |
| Publication Notice in the USA Today National Edition (2 days) | Before Day 30 |
| Last Date that Notice will be published on Claims Administrator's website | Day 75 or 60 Days after it is first published. |
| Last Date to file an Objection to the Settlement | Before Day 61 |
| Last Date to "opt out" of the Settlement | Before Day 61 |
| Final Approval Hearing | Day 75 |
| Last Day to Submit a Claim Form | Before Day 90 – (15 days after Final Settlement Hearing) |

Accordingly, the parties request that the Court schedule a Final Approval Hearing seventy-five (75) days after granting preliminary approval, or as soon thereafter as the Court's schedule permits.

## VII. CONCLUSION

For the reasons set forth above, the Plaintiff respectfully request the Court (1) conditionally certify the class; (2) conditionally designate Plaintiff Benware as

representative of the Class; (3) appoint Todd D. Carpenter of Carpenter Law Group as Class Counsel for the settlement Class; (4) grant preliminary approval of the settlement; (5) approve the proposed Class Notice plan; and (6) schedule a final approval hearing for the settlement.

Dated:  July 26, 2013                                                **CARPENTER LAW GROUP**

By: */s/ Todd D. Carpenter*
        Todd D. Carpenter (CA 234464)
        402 West Broadway, 29th Floor
        San Diego, California 92101
        Telephone:    619.347.3517
        Facsimile:     619.756.6991
        todd@carpenterlawyers.com

Attorneys for Plaintiff Travis Benware

1

## CERTIFICATE OF SERVICE

2       The undersigned hereby certify that on July 26, 2013, I electronically filed the

3   foregoing with the Clerk of the Court using the CM/ECF system per Civil Local Rule 5.4

4   which will send notification of such filing to the e-mail addresses denoted on the

5   Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document

6   or paper via the United States Postal Service to the non-CM/ECF participants indicated on

7   the Manual Notice list.  I certify under penalty of perjury under the laws of the United

8   States of America that the foregoing is true and correct.

9

10                          */s/ Todd D. Carpenter*
                            Todd D. Carpenter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28